LINCOLN L. and FRANCES N. LIBBY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Libby v. Commissioner
Docket No. 33520-83.
United States Tax Court
T.C. Memo 1986-388; 1986 Tax Ct. Memo LEXIS 218; 52 T.C.M. (CCH) 230; T.C.M. (RIA) 86388; August 20, 1986. Peter Stromer, for the petitioners. M. Kendall Williams, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a) [1]
Sec. 6653(a)(2) [2]
1979 [3]
$1,005.00
$53.00
1980
1,593.00
80.00
1981
1,260.00
63.00
50% of the interest
due on $1,260.00
*220 *221 The issues to be decided are (1) whether petitioners are entitled to a charitable contribution deduction under section 170 for taxable years 1979, 1980, and 1981; (2) whether petitioners are liable for additions to tax under section 6653(a); and (3) whether petitioners are liable for damages under section 6673. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and atached exhibits are incorporated herein by this reference. At the time they filed the petition in this case, petitioiners Lincoln L. Libby and Frances N. Libby, husband and wife, maintained a mailing address at P.O. Box 1152, Carmel Valley, California. Petitioners timely filed joint Federal income tax returns for each of the years in question with the Internal Revenue Service Center at Fresno, California. During the taxable years in issue, petitioner Lincoln L. Libby was employed by Montersey Tire Service, Seaside, California, as a manager and received wages from Monterey Tire Service. Petitioner Frances N. Libby was employed during taxable year 1979 as a housekeeping supervisor at Rippling River Center, a United States Department of Housing and Urban Development (HUD) *222 facility for handicapped and disabled individuals. [4] During taxable year 1980, Mrs. Libby received wages from Eleanor Atkinson. Mrs. Libby received self-employment income during taxable year 1981, as well as wages from Sarah Oppenheimer and a distribution from a pension and profit-sharing plan. Sometime prior to 1979, petitioners received a charter from the Universal Life Church, Modesto, California (ULC-Modesto), and established the Universal Life Church in the Wildwood, Carmel Valley, California (ULC-Wildwood). ULC-Wildwood has not been granted tax-exempt status under section 501(c)(3). [5]
*223 On their 1979 return, petitioners reported cash contributions to unnamed organizations in the amount of $3,411. Similarly, petitioners reported cash contributions to unnamed organizations in the amount of $5,056 and other than cash contributions in the amount of $150 for a total of $5,206 on their 1980 return, and cash contributions in the amount of $3,207 and other than cash contributions in the amount of $105 for a total of $3,312 on their 1981 return. [6] In support of the charitable contributions taken as deductions on their 1981 return, petitioners submitted a copy of their canceled check in the amount of $100 made payable to "Universal Life Church in the Wildwood." *224 In his notice of deficiency, respondent denied the claimed charitable contributions for lack of substantiation and for failure to meet the requirements of section 170 of the Internal Revenue Code. OPINION (1) Deductibility of Contributions
Under section 170, [7] a taxpayer is entitled to deduct contributions made to charitable organizations subject to certain limitations. In order to qualify for a deduction under section 170(c), petitioners must show (1) that the contributions were actually made; (2) that the contributions were made to a qualified tax-exempt organization; and (3) that no part of the net earnings of that organization inured to the benefit of any individual. Davis v. Commissioner,81 T.C. 806 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985); Miedaner v. Commissioner,81 T.C. 272 (1983); McGahen v. Commissioner,76 T.C. 468 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983). *225 Deductions are a matter of legislative grace and petitioners bear the burden of proving their entitlement to the claimed deductions. Deputy v. duPont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). For the following reasons, we find that petitioners have failed to meet this burden. First, petitioners have not produced any admissible evidence which would satisfy the substantiation requiremens of section 170. Sec. 170(a)(1); sec. 1.170A-1(a)(2), Income Tax Regs. Moreover, we note that the record in this case is not entirely clear as to the nature or destination of petitioners' alleged charitable contributions. In their petition filed with this Court, petitioners contended that they had made contributions to ULC-Modesto, but only after they had written "to the Treasury Department and received a positive reply." Petitioners, however, did not produce any canceled checks or receipts evidencing contributions to ULC-Modesto. Instead, at trial, petitioners testified they they had made donations of cash and non-cash items (including beds, canes, wheelchairs, *226 plants and landscaping materials, and hand-crafted items such as tables, mailboxces, and a pottery wheel) to Rippling River Center (the Center), a government facility for handicapped and disabled citizens. Mr. and Mrs. Libby also testified that they held church services, counseled the Center's residents, and provided transportation which enabled many of the residents to attend medical evaluations. Mrs. Libby stated that some of the items were given by petitioners in conjunction with "the church," while other items were "purchased with church funds and then donated to the Center." Petitioners contended that these contributions were equal to or in excess of the amounts claimed on their 1979, 1980, and 1981 Federal income tax returns. Petitioners attempted to introduce receipts acknowledging their alleged contributions to the Center. [8] These consisted of letters signed by officers of the Citizens Association of Rippling River (the Association), as well as thank you notes written by individual residents. Three letters, one undated, were signed by former managers of the Center, acknowledging receipt of a sterero, flowers, and plants and thanking the petitioners for their acts of kindness *227 and service to the Center residents. These receipts were not admitted into evidence at trial in this case under the rule against hearsay. See Davis v. Commissioner,supra at 814-815. Second, petitioners have failed to establish that the alleged contributions were made to a qualified tax-exempt organization. Although petitioners introduced a canceled check in the amount of $100 made payable to ULC-Wildwood, in order for that contribution to be deductible, petitioners' local congregation must qualify as a tax-exempt organization under section 501(c)(3).The *228 parties have stipulated that the charter congregation involved here was not a qualified tax-exempt organization and we agree. [9]
With respect to the alleged contributions made to the Center, petitioners have failed to establish that the alleged contributions were donated to or for the use of a state, possession of the United States or political subdivision thereof for exclusively publish purposes as required by section 170(c)(1). Nor have petitioners established that the Association qualifies as a charitable recipient under section 170(c)(2). In this regard Ms. Thomas, resident manager during 1980 and 1981 and bookkeeper during 1979, testified that in order for a gift to be received by the Center, on behalf of the United States government, the receipt of that item or gift would have been specifically acknowledged by her as representative *229 of the Housing Authority. However, Ms. Thomas testified that she was certain that neither the petitioners nor "their church" had made contributions or donations directly to the Center during the taxable years in issue, but if, in fact, gifts had been made, it was likely that they were given to individuals or to the Association, a group with no official authority to receive gifts on behalf of the Center. Mrs. Thomas stated that it was a common practice for citizens in the surrounding community to give gifts to individual residents. Gifts made for the benefit of specific individuals, however, are not deductible. Thomason v. Commissioner,2 T.C. 441, 443 (1943). Furthermore, donations of personal services, even if made to qualified organizations, are not deductible. Grant v. Commissioner,84 T.C. 809, 816 (1985), appeal filed (4th Cir., September 30, 1985). Only unreimbursed expenses incident to the rendition of services to a qualified charitable organization are deductible. Sec. 1.170A-1(g), Income Tax Regs.
Because petitioners have not substantiated the amounts of their claimed contributions nor shown that these contributions were made to a qualified *230 tax-exempt organization, we conclude that they have failed to meet their burden of proof on the issue of deductibility. Therefore, we need not address the issue of whether any net earnings inured to the benefit of petitioners. (2) Additions to Tax
Respondent has determined that petitioners are liable for additions to tax under section 6653(a). Section 6653(a)(1) provides for an addition to tax of five percent of any underpayment which is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to that portion of the underpayment due to negligence or intentional disregard of rules or regulations and for the period beginning on the last day prescribed by law for payment of the underpayment. See note 3, supra. Petitioners bear the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791 (1972); Enoch v. Commissioner,57 T.C. 781, 802 (1972); Rule 142(a). Petitioners introduced no evidence showing that their underpayment was not due to negligence or intentional disregard of *231 rules and regulations. Petitioners' testimony that they stopped donating to the church in 1982 "because of the tax problems with the IRS" has no bearing on the years in issue here. We conclude that petitioners' underpayment of tax was due to negligence or intentional disregard of rules and regulations. Accordingly, we sustain respondent's determination with respect to the additions to tax under section 6653(a)(1). We also conclude, for purposes of the addition to tax under section 6653(a)(2), that all of petitioners' underpayment for 1981 was attributable to negligence or intentional disregard of rules and regulations. We must next decide whether respondent's motion seeking damages under section 6673 should be granted. [10] We have considered the record in this particular case, and exercising our discretion, we have determined that damages pursuant to section 6673 will not be awarded in these proceedings. *232 Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Section 6653(a)(2), is effective for taxes the last date prescribed for payment of which is after December 31, 1981. This section provides: There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1), and (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax). Because neither assessment nor payment of the tax has occurred in this case, the period described in section 6653(a)(2)(B) has not yet closed, and therefore, the amount of the addition to tax under section 6653(a)(2) for 1981 cannot be determined at this time. ↩
3. Petitioners and respondent timely entered into a consent to extend the time to assess the tax for taxable year ending December 31, 1979 to December 31, 1983. Accordingly, the assessment of tax for taxable year 1979 is not barred by the statute of limitations.↩
4. At that time, Rippling River Center (the Center) was managed by Eskaton. Beginning in January 1980, the Monterey Housing Authority (Housing Authority) assumed management responsibilities for the Center. All Eskaton employees, including Mrs. Libby, were dismissed. The United States Department of Housing and Urban Development (HUD) subsequently sold the facility to the Housing Authority in July 1980.↩
5. At the time the alleged contributions to the Universal Life Church were made, the Universl Life Church, Inc., Modesto, California (ULC-Modesto), was exempt from taxation under section 501(c)(3) of the Internal Revenue Code. The Internal Revenue Service subsequently revoked its determination that ULC-Modesto is a tax-exempt organization. Announcement 84-90, 1984-36 I.R.B. 32↩ (September 4, 1984).
6. Petitioners attached a copy of their California State income tax return to their Federal income tax return for each of the years in issue. Mr. and Mrs. Libby's 1979 State income tax return shows cash contributions in the amount of $3,231 to "Church" and to "various" in the amount of $182. Similarly, petitioners' 1980 California return lists cash contributions to "Church" in the amount of $5,000, cash contributions of $56 to "various" and non-cash donations of $150. Attached to petitioners' State income tax return for 1981 (which lists a cash contribution to "Church" in the amount of $3,148), was a letter from ULC-Wildwood, acknowledging petitioners' alleged contribution of $3,147.50. The 1981 return also lists various cash contributions in the amount of $59 and non-cash contributions of $105.↩
7. The relevant provisions of sec. 170 are as follows: SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction. -- (1) General Rule. -- There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary. * * * (c) Charitable Contribution Defined. -- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made exclusively for public purposes. (2) A corporation, trust, or community chest, fund, or foundation -- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and * * *↩
8. Where a charitable contribution is made in property other than money, section 170 generally allows a deduction for the fair market value of the property at the time of the contribution. Sec. 1.170A-1(c), Income Tax Regs. The petitioners bear the burden of proving both the contributions and the fair market value of the property contributed. Rule 142(a), Zmuda v. Commissioner,79 T.C. 714, 726 (1982) affd. 731 F.2d 1417 (9th Cir. 1984); see also sec. 1.170A-1(a)(2)(ii), Income Tax Regs.↩ The petitioners here presented no proof as to the value of the alleged donations.
9. Moreover, this Court has consistently held that the tax-exempt status of ULC-Modesto (prior to revocation of the Internal Revenue Service ruling) does not automatically encompass other Universal Life Church chartered "congregations." See, e.g., Brown v. Commissioner,T.C. Memo. 1986-268↩ and cases cited therein at n. 4.
10. Section 6673 provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000.00 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as part of the tax.↩